UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 07-44312-SWR

**DEBRA L. KELLEY**                             Chapter 7

    Debtor.                                     HON. STEVEN W. RHODES
_____/

## DEBTOR'S RESPONSE TO UNITED STATES TRUSTEE'S MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)(2) AND (3)

NOW COMES Debtor, by and through her Attorney, THAV AND RYKE, P.L.L.C., and for her response to the United States Trustee's Motion to Dismiss states as follows:

The Trustee claims that there are valid grounds pursuant to 11 U.S.C. § 707(b)(2) and (3) with which to dismiss the Chapter 7 case of the Debtor, Debra L. Kelley. However, the Trustee fails to provide legal or factual support justifying the dismissal of this case under either code section. As such, the Trustee's motions should be denied.

### The Presumption of Abuse Pursuant to § 707(b)(2) Does Not Arise in this Case

The Trustee acknowledges the fact that this Court has already ruled against his position on the issue of whether a Debtor may include as a deduction in line 42 of Form B22A future payments for claims secured by an interest in property that the Debtor, via the Debtor's Statement of Intention, intends to surrender. The Trustee asks the Court to reconsider its position, thereby eliminating the Debtor's deduction for her monthly mortgage payment and altering the result of the Means Test. This, according to the Trustee, would invoke the presumption of abuse pursuant to § 707(b)(2), because "the Means Test would show monthly disposable income in an amount that would make the presumption of abuse arise." Nonetheless,

the Trustee does not articulate any legal arguments as to why this Court should alter its ruling on this issue, and merely points the court to the few districts cases that have ruled in favor of the Trustee's position. The fact is that the majority if Districts that have addressed this issue have sided with this Courts ruling. *In Re Hoerlein*, 2007 Bankr. LEXIS 1043, 3 (Bankr. S.D. Ohio 2007). The Debtor is allowed to deduct future payments for claims secured by an interest in property that the Debtor intends to surrender. These Courts have used the following rationales to explain why no other ruling is proper. First, the plain language of the code section clearly calls for this determination.

> "Congress' choice of the phrase, 'scheduled as contractually due,' suggests that, in determining which payments should be averaged for the deduction, the Court should determine how many payments are owed under the contract for each secured debt at the time of filing. This interpretation gives meaning to the word 'scheduled', which implies the possibility that the payments may not be made as required under contract, either because the debtor will surrender the collateral or because the payments might be modified and paid through a Chapter 13 Plan...The use of the phrase 'contractually due' also indicates an intent to permit a deduction for all secured debts, regardless of whether the debt is reaffirmed or the collateral is surrendered." *In re Walker*, 2006 Bankr. LEXIS 845, 25 (Bankr. N.D. Ga. 2006).

Likewise, in *In re Randle*, 358 B.R. 360, 2006 WL 3734351 (Bankr. N.D. Ill. 2006), the Court states:

> "[the statute] does not say that the debtor can deduct this amount only if she intends to keep the collateral post-petition. It does not say that the debtor can deduct this amount only if she intends to continue making payments due post-petition. And it does not refer to the debtor's Statement of Intention with respect to the collateral. The provision requires the court to consider only the amounts due under the contract itself."

The plain meaning is unambiguous and clear and must be followed as such. Nonetheless, the Districts that have ruled in favor of the Trustee's position concluded that the term "scheduled as" refers to the bankruptcy schedules, not to the payments scheduled under a contractual agreement.

*In re Skaggs*, 349 B.R. 594, 599 (Bankr. D. Mo. 2006). This, though, does not logically follow with the other sections of the Code that were added in 2005. "Sections §§ 524(k)(3)(H)(ii) and 1326(a)(1)(B) has three commonalities with § 707(b)(2)(A)(iii)(I): 1) all the provisions were added in the 2005 Act; 2) all the provisions address circumstances where a debtor scheduled payments in a lease or contract and 3) those sections do not refer to the bankruptcy schedules." *In re Sorrell*, 2007 Bankr. LEXIS 161, 3, 2007 WL 211276 (Bankr. S.D. Ohio 2007). Moreover, "a debtor's statement of intention is not a schedule." Id. Clearly, the plain meaning of "scheduled" is the appropriate interpretation, because it is unambiguous and consistent with other code sections.

The second rationale that supports this Courts prior ruling is that the legislative intent behind the modification to § 707(b) warrants the allowance of these deductions. "Quite Simply, the means test was specifically designed to remove judicial discretion from the abuse determination; it was created to provide a mechanical rule and a precise set of calculations which, once performed, determine if the 'presumption of abuse' arises. *In re Kogler*, 2007 Bankr. LEXIS 1648, 12 (Bankr. W.D. Wisc. 2007). The legislature wanted a bright line rule to determine if the presumption of abuse applied to allow for equal application throughout the Districts.

The *Hoerlein Court* also addressed the point of whether the contract must be reaffirmed on the date of filing so that the payments would be "contractually due". *In Re Hoerlein*, 2007 Bankr. LEXIS 1043, 4 (Bankr. S.D. Ohio 2007). The Court made it clear that even though bankruptcy discharges debts, it does not "extinguish" the debt. Id. "Thus, the effect of a discharge is to interpose a permanent barrier against debt collection rather than absolve the

underlying debt." *Id at 5*. Reaffirming the debt at the time of filing is not necessary for the payments to be "contractually due". This argument is without merit.

In conclusion, this Court has already correctly ruled on this issue. The Trustee does not provide any legal arguments or justifications that would compel this Court to revisit this issue. As such, the Debtor is allowed to deduct her mortgage payments under the means test. The result of the means test does not give rise to a presumption of abuse in this case. Therefore, the Trustee's motion to dismiss pursuant to § 707(b)(2) must be denied.

## There is No Abuse in this Case pursuant to § 707(b)(3) to Justify Dismissal of this Case

The Trustee claims that the Debtor erred in some of the calculated expenses listed in Schedule J. As such, the Trustee states that this constitutes an abuse of Chapter 7 pursuant to § 707(b)(3) and should be dismissed. The Trustee, however, fails to explain why the Debtor's estimates are abusive or why the Trustee's figures should be adopted. The Debtor's figures are wholly reasonable and do not provide the debtor the ability to repay her debts. The totality of the circumstances examination does not lead to the conclusion that abuse exists in this case. The motion for dismissal must be denied.

In paragraph 18, the Trustee argues that the Debtor's estimated rental expense, listed as $1200, is improper. The Trustee's first point of contention with this figure relates to the Debtor's estimate given at the 341 meeting. The Trustee claims that the Debtor stated that she expects to pay $1000 and hence her rental expense should be no more than $1000. However, the Debtor actually stated that she expects to pay around $1000. The Debtor's listed estimate of $1200 is reasonably around $1000. Additionally, the Debtor was asked this question as she was leaving the meeting, and was clearly caught off guard. This lends more credence to the fact that

the debtor did not answer this question with a well thought out estimate, but with a ball park figure. Therefore, her response at this meeting does nothing to undermine the $1200 rental expense, and only serves to validate this figure further. Moreover, the Debtor has merely investigated the cost of a replacement residence. The Debtor has not applied for any potential replacement residences. Given the effect upon the Debtor's credit from filing for Chapter 7, it can be assumed that it will be very difficult to find a residence for under $1200.

Concurrently, the Trustee argues that the IRS mortgage/rental expense pursuant to § 707(b)(2)(A)(ii)(I) should be used as the estimated rental expense. This claim has no merit under the Bankruptcy Code. The IRS mortgage/rental expense is solely applicable to the means test to determine if the presumption of abuse arises under 707(b)(2). "[W]hether the debtor passes or fails the means test is relevant only to the question of whether the U.S. Trustee will benefit from a presumption of abuse." *In re Walker*, 2006 Bankr. LEXIS 845, 25 (Bankr. N.D. Ga. 2006). The Northern District of Ohio Court further elaborates on this point:

> "The plain meaning of the phrase 'debtor's financial situation' must include a debtor's actual income and expenses, since such information is the starting point for any analysis of an individual's financial situation. There is no provision in § 707(b) stating that the means test is the only method through which a court may determine where there is abuse based on a debtor's ability to pay. Rather, the plain language of § 707(b)(3), read in conjunction with § 707(b)(1) and (2), is clear and compels a conclusion that a court must consider a debtor's actual debt paying ability in ruling on a motion to dismiss based on abuse where the presumption does not arise or is rebutted." *In re Mestemaker*, B.R. , 2007 Bankr. LEXIS 78, 2007 WL 79306 (Bankr. N.D. Ohio 2007)

The estimated rental expense must reflect the actual expense, not the IRS figure that is used for the means test. Therefore, the IRS mortgage/rental expense figure can not be used in light of the fact that the debtor has investigated replacement residences and found that the actual rental

expense can be reasonably estimated to $1200. The Trustee has failed to show that the listed rental expense is abusive or incorrect so as to justify altering the figure.

In Paragraph 19 of the Trustee's motion, the Trustee states that the electricity and heating expenses should be reduced from $225.00 to $100.00. The Trustee fails to give any justification as to why this reduction should occur outside of stating that this is in light of the impending surrender of Debtor's home. It is wholly justifiable to expect electricity and heating expenses for the debtor to average $225.00 a month over the course of the year whether she lives in her home or a rental property. Summer and winter months tend to heighten the cost of such expenses which support the notion that $225.00 is a modest estimate, and far from abusive. Moreover, the Trustee's verbiage contradicts its burden of proof under § 707(b)(3), undermining the usage of the Trustee's suggested estimate. Paragraph 19 states, "[t]hese include electricity and heating of fuel of $225.00 (Line2a) which presumably can be reduced to no more than $100.00." The use of the word "presumably" implies that some sort of presumption of abuse exists here. Under § 707(b)(3) there is no presumption of abuse. The Trustee must provide some sort of support for its notion that the estimate is too high. The Trustee fails to do this. Instead, the Trustee simply states an arbitrary number that supports his position. The fact of the matter is that $225.00 a month for the aforementioned expenses is reasonable and far from abusive and need not be altered.

Additionally in Paragraph 19, the Trustee states that water and sewer expenses and home maintenance expenses should be reduced to zero. This is patently unreasonable. The Debtor will face these expenses regardless if she is in an apartment or her home. Furthermore, the listed amount of $30 for water and sewer expenses, and $50 for home maintenance are completely reasonable. If anything, these listed estimates are perhaps too low. $50 a month for home

6

07-44312-swr    Doc 24    Filed 05/31/07    Entered 05/31/07 15:46:35    Page 6 of 8

maintenance comes to only $600 for the year allotted to expenses that relate to the upkeep of the Debtor's residence. With the myriad of problems and costs with keeping a residence, it is wholly possible that this $600 allotment could be spent on a single incident such as a small grease fire or damaged wall. These potential home maintenance expenses are endless. Therefore, the Debtor's given estimates for these expenses are reasonable.

Lastly, the Trustee argues that the Debtor's expenses for food should be lowered from $400 to $300 per month. Again, the Trustee fails to articulate why such a reduction is necessary. The Debtor's listed food expense of $400 works out to roughly $13.15 per day for food. This is hardly an abusive figure for a necessity of life. In fact, given that the Debtor is forced to eat out for 10 out of 21 meals per week, the listed food expense is quite modest. There is no reason to lower this figure any further.

There is, however, an estimate provided by the Debtor which can be deemed improper. The Debtor's estimated transportation expenses are too low. The Debtor lists such expenses at $225 per month. This estimate was calculated when gas prices were significantly lower than the current prices. Gas prices are up from roughly $2 to $3 per gallon. That is a 50% increase in price, which would correlate to an increase of $112.5 per month for transportation. This would put the estimated transportation expense at $337.50 per month. This further illustrates that the Debtor is incapable of repaying her debts and properly filed for Bankruptcy relief under Chapter 7.

In sum, the Trustee fails to justify why any the Debtor's listed estimates are unreasonable and should be lowered. In fact, the only estimate that appears to be incorrect is the estimate for transportation costs. This estimate is too low given the current rise in gas prices. The Debtor's expenses should be greater than the current listed amount. As such, it is clear that the totality of

the circumstances do not lead to a finding of abuse. The Debtor has listed reasonable estimates for her expenses which preclude her from having the ability to repay her debts via a Chapter 13 plan.

Wherefore, the Debtor respectfully requests that this Honorable Court deny the U.S. Trustee's motion to dismiss pursuant to § 707(b)(2) and (3).

Respectfully Submitted,

/s/ Jeffrey D. Thav
Jeffrey Thav
Attorney for Debtor
Thav & Ryke P.L.L.C.
29200 Northwestern Hwy., Ste. 155
Southfield, MI 48034
Phone: (248) 945-1111

DATED: May 31, 2007